1 | Joseph P. Costa, Esq. (State Bar No. 130131)
Darius Anthony Vosylius, Esq. (State Bar No. 175030)
2 | Jennifer Korth Hudson, Esq. (State Bar No. 247232)
COSTA, ABRAMS & COATE, LLP
3 | 1221 Second Street, Third Floor
Santa Monica, California  90401
4 | Tel: (310) 576-6161
Fax: (310) 576-6160
5 | E-Mail: joseph.costa@costalaw.com

6 | Attorneys for Plaintiff Perfect Pushup, LLC

7

8 | **UNITED STATES DISTRICT COURT**

9 | **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| PERFECT PUSHUP, LLC, a California limited liability company, | Case No.: CV 08-06544 DDP (CTx) |
| | Assigned to Hon. Dean D. Pregerson |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR:** |
| v. | |
| ONTEL PRODUCTS CORPORATION, a New Jersey corporation, | (1) Breach of Written Contract; |
| | (2) Breach Of The Implied Covenant Of Good Faith And Fair Dealing; |
| Defendant. | (3) Trade Dress Infringement Re: "Pushup Pro" (express unit) ; |
| | (4) Trademark Infringement Re: "Pushup Pro" (express unit) ; |
| | (5) Trade Dress Infringement Re: "Iron Gym"; |
| | (6) Trademark Infringement Re: "Iron Gym"; |
| | (7) Copyright Infringement Re: "Iron Gym": |
| | (8) State Unfair Competition; and |
| | (9) Unfair Business Practices Under Business And Profession Code §17200. |
| | **DEMAND FOR JURY TRIAL** |
| | Complaint Filed: October 3, 2008 |

I

COPY

FILED

2009 FEB 19  PM 1:50

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY

Plaintiff Perfect Pushup, LLC ("Perfect Pushup" or "Plaintiff"), complains and alleges against Defendant Ontel Products Corporation ("Ontel" or "Defendant") as follows:

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331.  This is an action for violations of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101, et seq.  Supplemental jurisdiction of the related claims is proper pursuant to 28 U.S.C. §1367.

2.      Further, personal jurisdiction is proper over Defendant because it markets products and services to customers and prospective customers in this District and State and Plaintiff is informed and believes and alleges thereon that at all relevant times herein, Defendant performed services, sold its products and/or otherwise transacted business in this District and State.

3.      Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b)(2).  Defendant transacts business in the Central District of California and the acts alleged herein took place, in part, in the Central District of California. Furthermore, Defendant consented to this Court's jurisdiction within the settlement agreement which is discussed *infra*.

**THE PARTIES**

4.      Plaintiff (formerly known as PT Metrics, LLC and Bodyrev, LLC) is a California limited liability company with its inventory and business fulfillment located in Los Angeles, California.  Plaintiff is a successful, fully-integrated direct response company that develops, manufactures and markets a growing line of fitness products for U.S. and international customers, including but not limited to the "Perfect Pushup," "Perfect Pushup" (basic unit), "Perfect Pushup" (travel unit) and the "Perfect Pullup."

5.      Plaintiff is informed and believes and thereon alleges that Defendant Ontel Products Corporation is a New Jersey corporation, with its principal place of business in Fairfield, New Jersey.  Defendant's president is Ashok Khubani, who, along with various family members (upon information and belief), owns and/or controls numerous Internet and direct response marketing companies. Defendant primarily markets and/or manufactures various house-wares, such as "Swivel Sweeper" mops and "Dryer Balls."  Plaintiff is further informed and believes that Defendant recently decided to enter the home fitness market and is now involved in the marketing, developing and manufacturing of several fitness products, including but not limited to the "Pushup Pro" and the "Iron Gym."

FIRST AMENDED COMPLAINT

## GENERAL ALLEGATIONS

### Plaintiff's Original "Perfect Pushup"

6.    In or around 1996, Alden Mills (one of Plaintiff's founders) conceived of the "Perfect Pushup" idea while serving as a platoon commander with the United States Navy SEALs. This idea included a better way to perform pushups by using a device that had rotating handles which would aid in performing a proper pushup.

7.    In or around October 2006, the "Perfect Pushup" began a print campaign. In or around January 2007, the "Perfect Pushup" began a large scale national advertising campaign in the direct response market (*i.e.* through the use of televised infomercials ("spots") and other means of direct marketing to consumers). Plaintiff is the owner and holder of all rights regarding "Perfect Pushup."

8.    From October 2006, to the present, the "Perfect Pushup" has become one of the most successful fitness products in the direct response market. To this end, millions of dollars have been spent marketing the "Perfect Pushup" and building it as a brand in the names of purchasing consumers. During this time, Plaintiff has used "Perfect Pushup" on the product itself, on the box of the product, on its website, in print advertisement and in its television infomercials.

FIRST AMENDED COMPLAINT

9.     During this period of time, Plaintiff has also used the "Get Ripped" mark in conjunction with the advertising of its fitness products.

10.     Plaintiff's "Perfect Pushup" has been and continues to be extensively advertised and sold through the United States, including California.  By virtue of advertising and sales, together with consumer acceptance and recognition, Plaintiff's "Perfect Pushup" and "Get Ripped" mark identifies Plaintiff's products only, and distinguishes them from exercise products sold by others.  Plaintiff's marks have thus become and are valuable assets symbolizing Plaintiff, its quality goods, and its goodwill.

## Defendant's "Pushup Pro" Enters The Marketplace

11.     Plaintiff is informed and believes, and alleges that Defendant Ontel Products Corporation, with actual notice of Plaintiff's development and ownership of  "Perfect Pushup," introduced its own product in or around July 2007: the "Pushup Pro," which was a direct competitor of "Perfect Pushup."

12.     Defendant was previously a company in the house-wares business, but shortly after Plaintiff's "Perfect Pushup" became successful, Defendant began to engage in the sale of a nearly identical-looking, yet much cheaper and inferior product, with a nearly identical iteration in the name – "Pushup Pro" rather than "Perfect Pushup."

FIRST AMENDED COMPLAINT

13.     Plaintiff is informed and believes, and alleges thereon, that Defendant deliberately named its product "Pushup Pro" (rather than "Perfect Pushup") and used a similar packaging and design so as to create a likelihood of confusion between the highly successful "Perfect Pushup" and Defendant's inferior "Pushup Pro."

14.     Plaintiff is informed and believes that Defendant's business strategy was to create an inferior copy-cat product and then attempt to advertise and package its inferior product in a manner designed to confuse the consumer (while simultaneously taking advantage of Plaintiff's substantial marketing efforts and expenditures). For instance, Plaintiff is informed and believes that Defendant started marketing its inferior "Pushup Pro" with a designation on its box containing the phrase "As Seen On TV" long before Defendant's product was actually advertised on television.

15.     Defendant's packaging of its original "Pushup Pro" product further evidences Defendant's intent to confuse the marketplace about its inferior product. For instance, Defendant's "Pushup Pro" box copied Plaintiff's packaging -- Defendant's box contained similar photographs, drawings and phrases. Furthermore, Defendant's subsequent infomercial also copied many distinct elements and the overall "look and feel" of Plaintiff's infomercial, including but

1   not limited to the "exploding muscles" technique (that highlighted the muscles

2   being worked).

3

4   **Plaintiff Filed Its Original Lawsuit Against Defendant Re: "Pushup Pro."**

5   16.   On July 25, 2007, Plaintiff filed a lawsuit against Defendant Ontel

6   Products Corporation asserting claims for trademark infringement and trade dress

7   infringement relating to Defendant's "Pushup Pro" product.  This action was filed

8   in the United States District Court, Central District of California, Case No. CV07-

9   04808, and was assigned to the Hon. Dean D. Pregerson.

10

11

12   17.   In an attempt to avoid further litigation, in December 2007, Plaintiff

13   participated in an early mediation with Defendant before JAMS in Santa Monica,

14   California.  At the early mediation, Defendant assured Plaintiff that any copying

15   between the two products (*i.e.* the "Perfect Pushup" and "Pushup Pro")  and their

16   marketing was purely coincidental and the result of circumstance.

17

18   18.   In December 2007, the parties entered into a settlement agreement

19   where Defendant expressly agreed that it would no longer call its product "Pushup

20   Pro."   Rather, it would agree to use the prefatory term "Jack Zatorski's" in

21   prominent locations on its retail packaging and in its infomercial and would not use

22   the word "Perfect" on its retail packaging or in its infomercial.  This prefatory

23   language of "Jack Zatorski's" was intended to prevent consumers from being

24   confused with Plaintiff's "Perfect Pushup" products.

25

26

27

FIRST AMENDED COMPLAINT

19.     An implied provision of the settlement agreement was that Defendant would use the term "Jack Zatorski's" on any future pushup product that Defendant distributed, marketed and/or manufactured.  A true and correct copy of the parties' settlement agreement is attached hereto as **Exhibit "A,"** which was drafted by the Defendant.  Although the settlement agreement contains a confidentiality clause, in late December 2008, Defendant's counsel indicated that Defendant would waive this confidentiality provision.  In turn, Plaintiff is also waiving said confidentiality clause.

**Defendant's "Pushup Pro" (Express Unit) And Its Breach of the Settlement Agreement**

20.     After the execution of the settlement agreement, Plaintiff began to manufacture, advertise and sell a travel edition of the "Perfect Pushup" (the "travel unit") as well as a smaller streamlined unit of the "Perfect Pushup" (the "basic unit") nationally to consumers.

21.     Seeing yet another opportunity to create confusion in the marketplace and to wrongfully usurp the goodwill created by Plaintiff's extensive marketing efforts, Defendant decided to follow in the shadows of Plaintiff's advertising and create a product based on Plaintiff's "Perfect Pushup" (travel unit)   and the "Perfect Pushup" (basic unit)  which it called "Pushup Pro" (express unit).  For

instance, Plaintiff's "Perfect Pushup" (basic unit) has handles that snap into place, just like Defendant's "Pushup Pro" (express unit).

22.    As discussed above, the parties' settlement agreement required Defendant to use "Jack Zatorski's" when describing its pushup products. Despite being reminded of this fact and being provided with an opportunity to cure this material breach of the settlement agreement Defendant refused to use "Jack Zatorski" in connection with the marketing of the "express" version of its pushup product.   Defendant's marketing of the "Pushup Pro" (express unit) without the "Jack Zatorski's" designation constitutes a breach of the express and implied terms of the settlement agreement (as set forth below), and is separately actionable as a violation of the Lanham Act (as set forth below).

### Plaintiff's "Perfect Pullup"

23.    Plaintiff also manufactures, advertises and sells a home gym product called the "Perfect Pullup," which is an exercise device and program that aids a user in performing a pull-up using the proper form and which is also used for a variety of other exercises.

24.    In early 2008, Plaintiff began a large marketing campaign for "Perfect Pullup."   This product, like its predecessors, quickly ascended on the monitoring charts to become a highly successful product.

FIRST AMENDED COMPLAINT

25.     The television campaign for "Perfect Pullup" featured a one and two minute spot, with a standing and isolated doorframe (a "floating doorframe"). This unique creation of a floating doorframe allowed the camera angle to photograph the actor performing the exercises in a 360-degree manner. The spot also features "exploding muscles" that highlight the muscles which are being exercised by this product. The spot ended by featuring a unique extra "ab strap" apparatus and had the actor performing exercise functions on that as well.

26.     The one and two minute spots for "Perfect Pullup" were duly registered with the United States Copyright Office. Attached hereto as **Exhibit "B"** is a copy of the U.S. Copyright Registration regarding the "Perfect Pullup" infomercial (which, according to the Copyright Office covers both the one and two-minute spots).

### Defendant's "Iron Gym"

27.     Continuing its pattern of tracking Plaintiff's advertising, in or around August 2008, Defendant launched an advertising campaign for its new home gym product entitled "Iron Gym."

28.     As part of its advertising campaign, Defendant was involved in the production of an infomercial for "Iron Gym." Defendant has again deliberately attempted to copy Plaintiff's marketing with the end result being a commercial that is both intrinsically and extrinsically substantially similar to protectable elements

1    in Plaintiff's commercial.   Specifically, the overall look and feel of Defendant's

2    advertising is substantially similar to Plaintiff's advertising. These similarities

3    include, *inter alia*: the following:

4

5        (a)    both commercials utilize a shirtless man demonstrating the product on

6    a "floating doorframe" – a set piece that does not exist in the real world;

7

8        (b)    both commercials utilize a camera panning across the floating

9    doorframe in a 360-degree manner;

10

11       (c)    both commercials use "exploding muscles" to highlight and isolate the

12   muscles that are being utilized by the products;

13       (d)    both commercials emphasize that the product can be used for three

14   types of exercises, and both products are demonstrated with the use of "ab straps";

15

16       (e)    Defendant's commercial uses Plaintiff's well-known mark/slogan

17   "Get Ripped!";

18       (f)    the color palettes of the two commercials are the same, consisting of

19   red, black, grey and white; and

20

21       (g)    much of the language in Defendant's voice-over is substantially

22   similar to Plaintiff's narration.

23

24       29.    There are many other ways to advertise pull-up exercise products, as

25   evidenced by the advertising by Plaintiff's other competitors.

26

27

1

# FIRST CLAIM FOR RELIEF

## (Breach of Written Contract)

30.     Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 29 of this First Amended Complaint as if set forth in full herein.

31.     On or about December 2007, Plaintiff and Defendant entered into a written settlement agreement.   A true and correct copy of this written agreement is attached hereto as **Exhibit "A."**   One of the material and express terms of this written agreement included the following: that Defendant would identify its "Pushup Pro" product with the prefatory language "Jack Zatorski's."   This prefatory language was intended to prevent consumers from being confused with Plaintiff's "Perfect Pushup" products.

32.     Defendant recently started selling a slightly different version of its "Pushup Pro" product by calling it the "Pushup Pro" (express unit). Defendant had an obligation to use the "Jack Zatorski's" designation to the "Pushup Pro" (express unit).

33.     Plaintiff is informed and believes and alleges thereon that Defendant had the right to use the "Jack Zatorski's" designation on its "Pushup Pro" (express unit) and that Defendant deliberately failed to do so.

34.     Defendant breached the express term of the written agreement by,

*inter alia*, not identifying its "Pushup Pro" (express unit) with the prefatory "Jack Zatorski's" designation. Nor did Defendant use words that are "sufficiently distinctive so that [Defendant's] product name will not be confusingly similar" to that of Plaintiff's product name, as required by the written agreement.

35. Plaintiff performed all conditions, covenants and promises required under the written agreement, except those conditions, covenants and promises which have been prevented or otherwise excused by the conduct of the Defendant.

36. As a result of the foregoing material breaches, Plaintiff has been damaged in an amount to be proven at trial, plus interest and consequential damages.

## SECOND CLAIM FOR RELIEF

### (Breach of The Implied Covenant Of Good Faith And Fair Dealing)

37. Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 29 of this First Amended Complaint as if set forth in full herein.

38. Inherent in the settlement agreement attached hereto as **Exhibit "A,"** as in every contract, was an implied covenant of good faith and fair dealing. That covenant imposed on each party to the agreement the duty to do whatever was reasonable to accomplish the purpose of the agreement, and the duty to refrain from doing anything knowingly to frustrate the accomplishment of those purposes

or to engage in any conduct to deprive the other party of the benefit of the agreement.

39.    One of the main purposes for the parties to enter into the settlement agreement was to prevent consumers from being confused between the competing pushup products sold by the parties.  For this reason, Defendant agreed to utilize the "Jack Zatorski's" designation (or other language sufficiently distinctive) on its pushup products.

40.    Plaintiff is informed and believes and alleges thereon that Defendant had the right to use the "Jack Zatorski's" designation" on its "Pushup Pro" (express unit) product and that Defendant deliberately failed to do so.

41.    Defendant has taken the bad faith position that its "Pushup Pro" (express unit) product is not subject to the settlement agreement because that product was not specifically identified within the settlement agreement. Defendant has also taken the bad faith position that the words "Express" and "Pro" are adequate substitutes for "Jack Zatorski's" and/or that "Express" and "Pro" are sufficiently distinctive from Plaintiff's pushup products. Despite Plaintiff's objections, Defendant continued to sell its "Pushup Pro" (express unit) product without addressing Plaintiff's concerns.

FIRST AMENDED COMPLAINT

42.   Defendant's conduct unfairly deprived Plaintiff the benefits of the settlement agreement and unjustly enriched Defendant.   Accordingly, Defendant breached the implied covenant of good faith and fair dealing.

43.   Plaintiff performed all conditions, covenants and promises required under the written agreement, except those conditions, covenants and promises which have been prevented or otherwise excused by the conduct of the Defendant.

44.   As a result of the foregoing material breaches, Plaintiff has been damaged in an amount to be proven at trial, plus interest and consequential damages.

## THIRD CLAIM FOR RELIEF

### (Trade Dress Infringement Re: "Pushup Pro" (express unit))

45.   Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 29 of this First Amended Complaint and incorporates each herein by reference.

46.   The trade dress of Plaintiff's "Perfect Pushup" (travel unit) and "Perfect Pushup" (basic unit) is distinctive and non-functional.  Due to Plaintiff's extensive advertising and promotion efforts Plaintiff's trade dress has also developed a secondary meaning with consumers, and it serves to distinguish Plaintiff's goods from the goods of others.

FIRST AMENDED COMPLAINT

47.     Plaintiff is informed and believes, and thereon alleges, that Defendant's "Pushup Pro" (express unit) copied the box concept for "Perfect Pushup" (travel unit) and "Perfect Pushup Basic Unit." The placement of photographs, the drawings and phrases used are similar. For instance, the boxes contain a similarly looking, similarly dressed man in a similar position using the product. The ratio and size of the men and their pushup devices are similar on the boxes. The wording on the boxes is also similar and uses the same key words in the same order.

48.     Furthermore, Defendant has used the confusingly similar tag line "Get Strong . . . Get Fit . . . Quick!" as Plaintiff's "Get Ripped" and "Get Fit" taglines. Defendant even includes an "As Seen on TV" designation on the box of its product, even though the "Pushup Pro" (express unit) has never been advertised on television, so as to improperly try to link its product to Plaintiff's extensive television advertising. Such actions are believed to be part of a further design to intentionally confuse would-be purchasers of Plaintiff's product into believing that Defendant's product is one and the same as Plaintiff's product.

49.     Plaintiff is further informed and believes that Defendant has developed a new logo consisting of the words "Pro Fit," with a specific design appearing between the words. This logo appears on Defendant's packaging of "Pushup Pro" (express unit) and demonstrates yet another instance of a deliberate

intent to confuse consumers as the logo contains a similar design that appears between the two words as Plaintiff's "Body Rev" logo.

50.    Due to the similarities between the trade dress of Plaintiff and Defendant's products, Plaintiff's "Perfect Pushup" (travel unit)   and "Perfect Pushup" (basic unit)   are   likely to be confused with Defendant's "Pushup Pro" (express unit)  by members of the consuming public.

51.    As a proximate result of the advantage accruing to Defendant's business from Plaintiff's nationwide advertising, sales, and consumer recognition, and as a proximate result of confusion, deception, or mistake caused by Defendant's wrongful advertising and sale of its goods, as alleged above bearing substantial similarities to Plaintiff's trade dress, Plaintiff has been deprived of and will in the future be deprived of substantial sales of its product and has been deprived of the value of its mark as a commercial asset in amounts to be determined at trial.

52.    Plaintiff is informed and believes, and thereon alleges, that unless restrained by this Court, Defendant will continue to infringe Plaintiff's mark, thus engendering a multiplicity of judicial proceedings, and pecuniary compensation will not afford Plaintiff adequate relief for the damage to its mark in the public perception.

FIRST AMENDED COMPLAINT

53.     The acts of Defendant are believed to be willful and accordingly, Plaintiff is entitled to receive treble damages as a result of Defendant's actions. Similarly, this is an exceptional case, warranting an award of attorneys' fees to Plaintiff is an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

### (Trademark Infringement Re: "Pushup Pro" (express unit))

54.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 29 of this First Amended Complaint and incorporates each herein by reference.

55.     Plaintiff is the owner and holder of all rights thereto for "Perfect Pushup." This mark has been extensively utilized by Plaintiff throughout the United States.   By virtue of advertising and sales, together with consumer acceptance and recognition, this mark identifies Plaintiff's pushup products only, and distinguishes them from pushup products sold by others.  Plaintiff's mark has thus become and is a valuable asset symbolizing Plaintiff, its quality of goods, and its goodwill. Because of the long and continuous use of the "Perfect Pushup" mark as described in this First Amended Complaint, the mark "Perfect Pushup" has acquired secondary meaning associated by purchasers and the public with Plaintiff's products and services.

56.   Defendant's use of the "Pushup Pro" (express unit), *inter alia*, is likely to cause confusion, mistake or deception among consumers as to the source, quality and nature of Plaintiff's pushup products.

57.   Plaintiff is further informed and believes that Defendant has furthered its intent to confuse would-be purchasers of their infringing products by actually attempting to pass-off its own "Pushup Pro" (express unit) product as Plaintiff's product. Furthermore, Defendant has used the confusingly similar tag line "Get Strong . . . Get Fit . . . Quick!" as Plaintiff's "Get Ripped" and "Get Fit" taglines. Defendant even includes an "As Seen on TV" designation on the box of its product, even though the "Pushup Pro" (express unit) has never been advertised on television so as to improperly try to link its product to Plaintiff's extensive television advertising. Such actions are believed to be part of a further design to intentionally confuse would-be purchasers of Plaintiff's product into believing that Defendant's product is one and the same as Plaintiff's product.

58.   Plaintiff is further informed and believes that Defendant has developed a new logo consisting of the words "Pro Fit," with a specific design appearing between the words.  This logo appears on Defendant's packaging of "Pushup Pro" (express unit) and demonstrates yet another instance of a deliberate intent to confuse consumers as the logo contains a similar design that appears between the two words as Plaintiff's "Body Rev" logo.

59.   Such actions are further evidence that Defendant has a pattern of usurping the goodwill of Plaintiff's products in the development and marketing of its own competing products.

60.   Plaintiff has continually requested that Defendant cease the above-described infringing activity; however, Defendant has failed and refused, and continues to fail and refuse, to comply with Plaintiff's request.

61.   As a proximate result of advantage accruing to Defendant's business from Plaintiff's nationwide advertising, sales, and consumer recognition, and as a proximate result of confusion, deception, or mistake caused by Defendant's wrongful advertising and sale of its goods, as alleged above bearing substantial similarities to Plaintiff's "Perfect Pushup" mark, Plaintiff has been deprived of and will in the future be deprived of substantial sales of its product and has been deprived the value of these marks as a commercial asset in amounts to be determined at trial.

62.   Plaintiff is informed and believes, and thereon alleges, that unless restrained by this Court, Defendant will continue to infringe Plaintiff's mark, thus engendering a multiplicity of judicial proceedings, and pecuniary compensation will not afford Plaintiff adequate relief for the damage to its mark in the public perception.

FIRST AMENDED COMPLAINT

63.   The acts of Defendant are believed to be willful and accordingly, Plaintiff is entitled to receive treble damages as a result of Defendant's actions. Similarly, this is an exceptional case, warranting an award of attorneys' fees to Plaintiff in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

### (Trade Dress Infringement Re: "Iron Gym")

64.   Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 29 of this First Amended Complaint and incorporates each herein by reference.

65.   The trade dress of Plaintiff's "Perfect Pullup" is distinctive and non-functional.   Due to Plaintiff's extensive advertising and promotion efforts Plaintiff's trade dress has also developed a secondary meaning with consumers, and it serves to distinguish Plaintiff's goods from the goods of others.

66.   Plaintiff is informed and believes, and thereon alleges, that Defendant's "Iron Gym" copied the box concept of Plaintiff's "Perfect Pullup." The placement of photographs, the drawings and phrases used are similar.   For instance, the boxes contain a similarly looking, similarly dressed man in a similar position using the product.   The ratio and size of the photographs and the exercise products are similar.   The wording on the boxes is also similar and uses the same

key words in the same order. The color scheme is also similar, with both boxes containing color schemes of red, white and black.

67.    Furthermore, Defendant has used the confusingly similar tag line "Get Strong . . . Get Ripped . . . Quick!" as Plaintiff's "Get Ripped!" tagline.

68.    Due to the similarities between the trade dress of Plaintiff and Defendant's products, Plaintiff's "Perfect Pullup" is likely to be confused with Defendant's "Iron Gym" by members of the consuming public.

69.    As a proximate result of the advantage accruing to Defendant's business from Plaintiff's nationwide advertising, sales, and consumer recognition, and as a proximate result of confusion, deception, or mistake caused by Defendant's wrongful advertising and sale of its goods, as alleged above bearing substantial similarities to Plaintiff's trade dress, Plaintiff has been deprived of and will in the future be deprived of substantial sales of its product and has been deprived of the value of its mark as a commercial asset in amounts to be determined at trial.

70.    Plaintiff is informed and believes, and thereon alleges, that unless restrained by this Court, Defendant will continue to infringe Plaintiff's trade dress and mark, thus engendering a multiplicity of judicial proceedings, and pecuniary compensation will not afford Plaintiff adequate relief for the damage to its mark in the public perception.

71.    The acts of Defendant are believed to be willful and accordingly, Plaintiff is entitled to receive treble damages as a result of Defendant's actions. Similarly, this is an exceptional case, warranting an award of attorneys' fees to Plaintiff is an amount to be proven at trial.

**SIXTH CLAIM FOR RELIEF**

**(Trademark Infringement Re: "Iron Gym")**

72.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 29 of this First Amended Complaint and incorporates each herein by reference.

73.    Plaintiff is the holder of rights to the "Get Ripped" mark. This mark has been extensively utilized by Plaintiff throughout the United States. By virtue of advertising and sales, together with consumer acceptance and recognition, this mark identifies Plaintiff's products only, and distinguishes them from fitness products sold by others. Plaintiff's mark has thus become and is a valuable asset symbolizing Plaintiff, its quality of goods, and its goodwill. Because of the long and continuous use of the "Get Ripped" mark as described in this First Amended Complaint, this mark has acquired secondary meaning associated by purchasers and the public with Plaintiff's products and services.

74.     Defendant's use of the "Get Ripped" mark, *inter alia*, on its "Iron Gym" advertising is likely to cause confusion, mistake or deception among consumers as to the source, quality and nature of Plaintiff's products.

75.     Plaintiff is further informed and believes that Defendant has developed a new logo consisting of the words "Pro Fit," with a specific design appearing between the words.  This logo appears on Defendant's packaging of "Iron Gym" and demonstrates yet another instance of a deliberate intent to confuse consumers as the logo contains a similar design that appears between the two words as Plaintiff's "Body Rev" logo.

76.     Such actions are further evidence that Defendant has a pattern of usurping the goodwill of Plaintiff's products in the development and marketing of its own competing products.

77.     Plaintiff has continually requested that Defendant cease the above-described infringing activity; however, Defendant has failed and refused, and continues to fail and refuse, to comply with Plaintiff's request.

78.     As a proximate result of advantage accruing to Defendant's business from Plaintiff's nationwide advertising, sales, and consumer recognition, and as a proximate result of confusion, deception, or mistake caused by Defendant's wrongful advertising and sale of its goods, as alleged above bearing substantial similarities to Plaintiff's "Get Ripped" mark, Plaintiff has been deprived of and

FIRST AMENDED COMPLAINT

will in the future be deprived of substantial sales of its product and has been deprived of the value of these marks as a commercial asset in amounts to be determined at trial.

79.     Plaintiff is informed and believes, and thereon alleges, that unless restrained by this Court, Defendant will continue to infringe Plaintiff's mark, thus engendering a multiplicity of judicial proceedings, and pecuniary compensation will not afford Plaintiff adequate relief for the damage to its mark in the public perception.

80.     The acts of Defendant are believed to be willful and accordingly, Plaintiff is entitled to receive treble damages as a result of Defendant's actions. Similarly, this is an exceptional case, warranting an award of attorneys' fees to Plaintiff in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF

### (Copyright Infringement Re: "Iron Gym")

81.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 29 of this First Amended Complaint and reiterates the same, as though fully set forth herein.

82.     Plaintiff owns the federal copyrights in and to advertisements for "Perfect Pullup." A true and correct copy of Plaintiff's United States Copyright

1   Office Certificate of Registration is attached hereto and incorporated herein as

2   **Exhibit "B"** (U.S. Copyright Registration No. PA 1-593-266).

3

4       83.    Plaintiff's work is wholly original and constitutes copyrightable

5   subject matter under the Copyright Act of 1976. Plaintiff complied in all respects

6   with the copyright laws to secure the exclusive rights and privileges in the

7   copyrights in its work, including, but not limited to the rights relating to

8   reproduction, adaptation, distribution, public display, public performance, or

9   derivative works.

10

11      84.    Plaintiff is informed and believes, and thereon alleges, that after

12  Plaintiff introduced the "Perfect Pullup" into the marketplace and began

13  advertising this product, Defendant developed its own home gym and pull-up

14  produced called the "Iron Gym." To this end, Defendant produced a television

15  spot for the "Iron Gym" that is substantially similar to Plaintiff's television

16  commercial.

17

18      85.    Plaintiff is informed and believes, and thereon alleges, that Defendant

19  directly copied protected expression from Plaintiff's "Perfect Pullup" infomercial

20  without authorization.   Defendant's "Iron Gym" commercial copies numerous

21  extrinsic and intrinsic elements from Plaintiff's "Perfect Pullup" commercial, as set

22  forth above. The overall look and feel of the two commercials is substantially

23  similar.

86.   By its conduct as alleged herein, Defendant infringed, and continues to infringe, Plaintiff's exclusive rights to reproduce its work, to prepare derivative works based upon them, to distribute copies of them to the public, and to display them to the general public.

87.   Plaintiff is further informed and believes that Defendant's act of infringement was willful, intentional and with disregard of and with indifference to the rights of the Plaintiff.

88.   As a direct and proximate result of Defendants' repeated infringements of Plaintiff's reproduction, distribution, public display, public performance, or derivative work rights, Plaintiff sustained and continues to sustain substantial damages in an amount presently unknown but which will be established at trial according to proof.

89.   Defendants' infringements are continuing and threaten to irreparably harm Plaintiff's copyright interests, as well as its good name and good will. Accordingly, Plaintiff is entitled to an injunction barring Defendant, its agents, employees and representative from: (i) displaying its "Iron Gym" infomercial and (ii) profiting from any sales or distribution of "Iron Gym" which derives from the infomercial.

90.   Plaintiff has no adequate remedy at law to redress Defendants' continuing wrongful conduct.

91.   As a direct result of Defendant's wrongful infringing conduct, Plaintiff is also entitled to statutory copyright damages, or if Plaintiff so elects, Plaintiff's actual damages and Defendants' profits and attorney fees according to proof at trial.

## **EIGHTH CLAIM FOR RELIEF**

### **(State Common Law Unfair Competition)**

92.   Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 29, 46 through 53 and 65 through 71 of this First Amended Complaint and reiterates the same, as though fully set forth herein.

93.   The acts and conduct of Defendant as alleged above constitute unfair competition pursuant to the common law of the State of California.

94.   This wrongful conduct is injuring Plaintiff and is diverting from Plaintiff to Defendant's customers who would otherwise buy Plaintiff's products. As a result, Defendant's wrongful conduct has caused direct and proximate damage to Plaintiff.

95.   Plaintiff is further informed and believes that Defendant's wrongful conduct was willful, intentional and with disregard of and with indifference to Plaintiff's rights.

96.   Defendant's conduct as alleged above has damaged and will continue to damage Plaintiff's goodwill and reputation and has resulted in losses to Plaintiff

1   and an illicit gain of profit to Defendant in an amount which is unknown at the

2   present time.

3

4   ## NINTH CLAIM FOR RELIEF

5   ### (Unfair Business Practices – Bus. and &Prof. §17200)

6   97.    Plaintiff repeats and re-alleges the allegations contained in paragraphs

7
8   1 through 29, 46 through 53 and 65 through 71 of this First Amended Complaint

9   and reiterates the same, as though fully set forth herein.

10  98.    Plaintiff brings this action on its own behalf and on behalf of all

11
12  persons and companies similarly situated.  The class that Plaintiff represents is

13  composed of all persons or companies who, at any time since the date four years

14
15  before the filing of this action have had their products and/or the marketing of

16  those products usurped by Defendant.  The persons in this class are believed to be

17  so numerous that the joinder of all such persons is impracticable and that the

18
19  disposition of their claims in a class action is a benefit to the parties and to the

20  Court.

21  99.    There is a well-defined community of interest in the questions of

22
23  law and fact involved affecting the parties to be represented in that each member of

24  the class is or has been in the same factual circumstances, hereinafter alleged, as

25  Plaintiff.  Proof of a common or single state of facts will establish the right of each

26
27

member of the class to recover.  The claims of Plaintiff are typical of those of the class and Plaintiff will fairly and adequately represent the interests of the class.

100.     Plaintiff has invested time, money and effort into developing and establishing its marks and products, including but not limited to the "Perfect Pushup," the "Perfect Pushup" (travel unit), the "Perfect Pushup" (basic unit) and the "Perfect Pullup."

101.     By selling nearly identical products, Defendant has designed a method to pass-off its goods as the goods of Plaintiff, including but not limited to Defendant's "Pushup Pro" (express unit) and the "Iron Gym."  Such actions have caused a likelihood of confusion in the eyes of the would-be purchasers of the products.

102.     Defendant's acts constitute a false representation and designation of origin in connection with the advertising and sale of goods or services and is an unfair business practice pursuant to California's Business and Professions Code §17200 *et seq.*  Specifically, Defendant is using deceptive, misleading and confusingly similar advertising for its products to identify goods in competition with Plaintiff's goods in the same trade area in which Plaintiff has already established its mark.

103.     As a direct, proximate, and foreseeable result of Defendant's wrongful conduct, as alleged above, Plaintiff's goodwill and reputation and that of

the other members of the plaintiff class, who are unknown to Plaintiff, have been damaged and will continue to be damaged, resulting in losses to Plaintiff and an illicit gain of profit to Defendant in an amount which is unknown at the present time.   Consumers are entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendant as a result of such unfair business acts or practices.

104.     Despite receiving notice from Plaintiff of these unfair practices, Defendant has refused, and continues to refuse, to cease such actions.

105.     Defendant's acts hereinabove alleged are acts of unfair competition within the meaning of California's Business and Professions Code §17200 *et seq.* Plaintiff is informed and believes that Defendant will continue to do those acts unless the Court Orders Defendant to cease and desist.

106.     Plaintiff has incurred and, during the pendency of this action, will incur expenses for attorney fees and costs.   Such attorney fees and costs are necessary for the prosecution of this action and will result in a benefit to each of the members of the class.

107.     Accordingly, Plaintiff is entitled to an injunction barring Defendant, its agents, employees and representative from: (i) displaying its "Iron Gym" infomercial; (ii) profiting from any sales or distribution of "Iron Gym"

deriving from the infomercial; (iii) profiting from any sales or distribution of "Pushup Pro" (express unit) deriving from the false advertising of that product. In addition, restitution should be awarded and Defendant should be compelled to return the amounts it received from its unfair business practices.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court to enter its judgment against Defendant as follows:

(1)     That Plaintiff be awarded compensatory and consequential damages as a result of Defendant's breach of the parties' settlement agreement

(2)     That Plaintiff be awarded damages for all of Defendant's profits derived from its infringement of Plaintiff's marks;

(3)     The issuance of an injunction barring Defendant, its agents, employees, and/or representatives from: (i) further distributing selling, causing or authorizing sales and distribution of "Pushup Pro" (express unit) and (ii) obtaining or retaining physical possession of any infringing "Pushup Pro" (express unit) goods;

(4)     The issuance of an injunction barring Defendant, its agents, employees, re-sellers and/or representatives from: (i) further distributing selling, causing or authorizing sales and distribution of "Iron Gym" and (ii) obtaining or retaining physical possession of any

FIRST AMENDED COMPLAINT

infringing "Iron Gym" goods that were sold as a result of Defendant's infringing commercial;

(5) The issuance of an injunction barring Defendant, its agents, employees, and/or representatives from: (i) displaying its "Iron Gym" infomercial and (ii) profiting from any sales or distribution of "Iron Gym" deriving from the "Iron Gym" infomercial;

(6) That Plaintiff be awarded damages for the injuries to Plaintiff in an amount up to three times the actual damage and/or profits of the Defendant, together with attorney's fees, disbursement and costs of this action pursuant to 15 U.S.C. §1117;

(7) For statutory copyright damages, or alternatively, if Plaintiff so elects, Plaintiff's actual damages and Defendant's profits according to proof;

(8) For allowable punitive damages;

(9) That Defendant account for all profits and revenues generated by the distribution, selling, causing or authorizing sales and distribution of their infringing "Pushup Pro" and "Iron Gym" products;

(10) For consumer and/or class restitution;

(11) For allowable attorneys' fees; and

(12)   For all other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: February 13, 2009          COSTA ABRAMS & COATE LLP

By:

Joseph P. Costa
Darius Anthony Vosylius
Jennifer Korth Hudson
Attorneys for Plaintiff
Perfect Pushup, LLC

34

FIRST AMENDED COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiff hereby demands a trial by jury.

3

4

5   Dated: February 13, 2009      COSTA ABRAMS & COATE LLP

6

7             By:

8

               Joseph P. Costa

9                Darius Anthony Vosylius

               Jennifer Korth Hudson

10                Attorneys for Plaintiff

11                Perfect Pushup, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

FIRST AMENDED COMPLAINT

Exhibit A

## SETTLEMENT AGREEMENT

This Settlement Agreement is by and between PT Metrics, LLC. a California limited liability company having a place of business at 1115 Magnolia Avenue, Larkspur, California 94939 (hereafter "PT Metrics"), and Ontel Products Corp., a New Jersey corporation having a place of business at 21 Law Drive, Fairfield, NJ 07004 (hereafter "Ontel").

**WHEREAS**, PT Metrics is marketing an exercise device known as the "Perfect Pushup" and Ontel is marketing an exercise device originally known as " Pushup Pro", but presently called "Jack Zatorski's Pushup Pro."

**WHEREAS**, on July 25, 2007, PT Metrics filed suit against Ontel in the United States District Court for the Central District of California (Case No. CV07-04808 DDP) alleging, among other things, trademark and trade dress infringement with respect to the Pushup Pro product (the "Court Complaint").

**WHEREAS**, subsequent thereto the parties with counsel met in Santa Monica, California in a voluntary JAMS mediation in an attempt to address the concerns expressed in the Court Complaint as well as other matters relating to their respective sales of the products.

**WHEREAS**, the parties desire to settle their differences on an amicable basis to fully and finally resolve the above referenced litigation and to avoid the incurrence of additional costs and expenses therein.

**NOW, THEREFORE**, in consideration of the mutual covenants herein contained, the parties hereto agree as follows:

1.    **Filing Notice of Dismissal without Prejudice of Court Complaint**. On the date of full execution of this Settlement Agreement, PT Metrics shall file, or deliver to counsel for Ontel to file, in the United States District Court for the Central District of California a Notice of Dismissal without prejudice of the Court Complaint in a form satisfactory to Ontel. The parties covenant not to sue each other for the actions that were either alleged, or that could have been

*Ex. A*

alleged in the Court Complaint, or in any Counterclaims that could have been raised as part of the proceedings involving the Court Complaint; however, upon the termination of this Agreement by either party, the parties shall no longer be bound by this covenant not to sue and may re-initiate any of the claims that were raised in the Court Complaint or that could have been raised in any proceedings related to the Court Complaint including counterclaims and defenses. Should any subsequent action be brought by any party to this Agreement with respect to the Perfect Pushup or Pushup Pro products, then the parties agree that the United States District Court for the Central District of California shall retain jurisdiction over such proceeding.

2.   **Restrictions on the Parties Marketing the Pushup Products on the Internet Using Certain Agreed Search Terms.**   Ontel agrees that beginning promptly after full execution of this Agreement, it will not use the words "perfect" or "bodyrev", including any misspellings thereof, in any web/internet marketing or search engine optimization tools including metadata, key words, and sponsored links to promote and direct internet users to Ontel's Pushup Pro product or any other product substantially similar thereto, and it will instruct online internet distributors to whom it or its subdistributors have sold the product (excluding any brick and mortar retailers with 5 or more stores who have their own websites) that it knows are using or intending to use such words in the aforesaid manner in their marketing activities to immediately cease doing so.

PT Metrics agrees that beginning promptly after full execution of this Agreement, it will not use the words "pro", or "jack", "zatoraki", or "ultimate" including any misspellings thereof, in any web/internet marketing search engine optimization tool including metadata, key words, and sponsored links to promote and direct internet users to PT Metric's Perfect Pushup product or any other product substantially similar thereto, and it will instruct online internet distributors to whom it has sold the product (excluding any brick and mortar retailers with 5 or more stores who have their own websites) that it knows are using or intending to use such words in the aforesaid manner in their marketing activities to immediately cease doing so. Nothing in this Paragraph is intended to preclude PT Metrics from using "pro" in accordance with Paragraph 4 of this Agreement.

3.   **Ontel to Identify its Product with the Words "Jack Zatorski's" or Another Equally Distinctive Mark and Not to Use the Word Perfect in Identifying or Marketing its Product.**

    a.   Ontel agrees that within 90 days after full execution of this Agreement, it will commence using the words "Jack Zatorski's" in prominent locations on its retail packaging and in its infomercial and will not use the word "Perfect" on its retail packaging or in its infomercial. If 90 days following full execution of this Agreement Ontel has in its possession any remaining retail boxes which do not contain the words "Jack Zatorski's", Ontel will destroy them. PT Metrics agrees that the manner in which the words "Jack Zatorski's" has been placed on Ontel's retail box, a copy of which is attached hereto, and the use of the words in Ontel's infomercial as can be seen at www.buypushuppro.com website on the date that PT Metrics' executes this Agreement is acceptable to PT Metrics unless there is a termination of this Agreement.

    b.   Ontel agrees that within 10 days after full execution of this Agreement, it will not use the word "Perfect" in identifying or marketing its product on the internet.

    c.   Should Ontel's rights to use the words "Jack Zatorski's" terminate, Ontel may substitute the words for a new mark sufficiently distinctive so that Ontel's product's name will not be confusingly similar to that of PT Metrics' product's name.

    d.   Ontel advises PT Metrics that some of its third party distributors, including internet distributors, have been using ad copy portraying the earlier retail box for the Pushup Pro which does not contain the words "Jack Zatorski's." PT Metrics agrees that so long as this agreement is not otherwise terminated it will not assert against such distributors a claim that the portrayal of the earlier retail box and their references in advertising to the words "Pushup Pro" without the preceding term 'Jack Zatorski's' infringe the rights of PT Metrics in any manner, except that notwithstanding the foregoing PT Metrics may if it chooses bring claims of

infringement against such distributors that arise from their marketing and sales activities that occur after PT Metrics has first provided to them written notice and at least 15 days opportunity to change their ad copy and wording, while simultaneously providing a copy of the notice to Ontel.

4.  **PT Metrics Not to Use the Word "Pro" in Identifying or Marketing its Product.** PT Metrics agrees that within 20 days after full execution of this Agreement, it will not use the word "Pro" in identifying or marketing its product. Nothing contained herein, however, will preclude PT Metrics from using the word "professional" or "Pro" as part of its product trademark or as a descriptive term in connection with its marketing activities for a higher priced product than its standard product offer.

5.  **Ontel's Trademark Application.** PT Metrics agrees that it will not file an opposition to Ontel's trademark applications for "Pushup Pro."

6.  **Breach; Right to Cure.** Either party may terminate the covenant not to sue in Paragraph 1 of this Agreement, or instead may terminate this Agreement including the covenant not to sue, upon 15 business days written notice for a party's failure to fulfill any of the terms of this Agreement (a "Breach"). Each party will have the right to cure any Breach prior to the expiration of this 15 day period; however, should any party generally commit the same type of Breach after notice and an opportunity to cure has been made on three separate occasions, then there shall no longer exist any rights to cure the Breach.

All notices under this Agreement shall be made by a verifiable form of overnight mail and shall be deemed given on the date of the record of delivery of the notice. All notices under this Agreement shall be provided as follows:

If to PT Metrics: Joseph P. Costa, Esq., Costa Abrams & Coate LLP, 1221 Second Street, Third Floor, Santa Monica, CA 90401, with a copy sent by e-mail to: joseph.costa@costalaw.com.

If to Ontel:

39

Joe A. Shull, Esq., Venable LLP, 575 7th Street, N.W., Washington, D.C., 20004, with a copy sent by e-mail to: jashull@venable.com, and to

Chuck Khubani, President, Ontel Products Corporation, 21 Law Drive, Fairfield, New Jersey, 07004, with a copy sent by e-mail to: chuck@ontelproducts.com.

7.      **Counterparts; Facsimiles**. This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one agreement, which shall be binding upon and effective as to all parties. This Agreement may be executed and delivered by electronic facsimile (including scanning) transmission with the same force and effect as if it were executed and delivered by the parties simultaneously in the presence of one another, and signatures on a facsimile copy hereof shall be deemed authorized original signatures.

8.      **Confidentiality**. The parties agree to maintain the terms of this Agreement in confidence and shall only share said terms with their attorneys and financial and professional advisors, and parties who may be acquiring their respective assets or business, and as otherwise may be appropriate in order to enforce their respective rights under this Agreement. The parties are entitled to communicate to others that they have settled their dispute by the dismissal of the Complaint and that neither is at the time of execution of this Agreement claiming that the other is infringing any of their property rights.

**IN WITNESS WHEREOF**, the parties, intending to be legally bound, have caused this instrument to be executed in counterparts, as of the date last below written.

PT METRICS, LLC                          **ONTEL PRODUCTS CORP.**

_____ 12DEC07-        _____ 12/21/07
Alden Mills          Date                Chuck Khubani,          Date
Chief Executive Officer                  President

-8-
40



Instruction Guide Front Cover





Retail Box Left Side





Retail Box Back

Retail Box Top



Retail Box Bottom

Retail Box Front



Retail Box Right Side



41

Exhibit B

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code,*
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

## PA 1-593-266

**Effective date of
registration:**

February 20, 2008

## Title

Title of Work: PERFECT PULLUP COMMERCIAL - 2 MINUTE VERSION

## Completion/Publication

Year of Completion: 2008

Date of 1st Publication: January 21, 2008     Nation of 1st Publication: United States

## Author

■     Author: STEVEN BOGGESS

Author Created: direction/director

Work made for hire: No

Citizen of: United States     Domiciled in: United States

## Copyright claimant

Copyright Claimant: BODYREV, LLC

487 Miller Avenue, Suite E, Mill Valley, CA 94941 United States

Transfer Statement: By written agreement

## Rights and Permissions

Name: Matthew J. Lattig

Email: mjl@mg-ip.com     Telephone: 540-270-4021

Address: PO BOX 1364

FAIRFAX, VA 22038-1364

## Certification

Name: Matthew J. Lattig

Date: February 20, 2008

*Ex B*

42

## <u>DECLARATION OF SERVICE</u>

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.

On February 18, 2009, I served the foregoing documents described as **FIRST AMENDED COMPLAINT** on the interested parties in this action by placing a copy thereof enclosed in a sealed envelope as follows:

Robert F. Helfing, Esq.
SEDGWICK, DETERT, MORAN & ARNOLD, LLP
801 S. Figueroa Street, 19th Floor
Los Angeles, California 90017
Fax: (213) 426-6921

[X]  **(BY MAIL)** I deposited such envelope in the mail at Santa Monica, California.  The envelope was mailed with postage fully prepaid.  I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing.  It is deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at Santa Monica, California in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

[X]  **(Federal)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on February 18, 2009, at Santa Monica, California.

Roxie Lonergan
Roxie Lonergan